UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ALAN SMITH                          : CIVIL ACTION – LAW
                                    :
            Plaintiff,              : (JUDGE McCLURE)
vs.                                 : (MAG. JUDGE CARLSON)
                                    :
JANINE DONATE, et al.               : NO. 4:10-CV-02133
                                    :
            Defendants,             : (ELECTRONICALLY FILED)

**DEFENDANTS DONATE, CHIARELLI, CARROLL, SHANLEY,
HEBRON, KEARNEY, BLUME, MALLICK, ZEMANTAUSKI, MOSKWA,
TALUTTO AND CAPONE'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT FILED PURSUANT TO L.R. 56.1**

AND NOW comes the Defendants Janine Donate, Frank Chiarelli, Nancy

Carroll, Bill Shanley, Isaac Hebron, Joseph Kearney, Scott Blume, Michael

Mallick Correctional Officer Zemantauski, John Moskwa, Jason Talutto and Rick

Capone, by and through their counsel, Dougherty, Leventhal & Price, LLP,  and

file their Statement of Undisputed Material Facts pursuant to Local Rule 56.1,

averring in support the following:

1.  Defendant Patrick "Rick" Capone has submitted sworn testimony in the form of an Affidavit which represents an accurate version of what happened in the above-referenced matter.  The sworn Affidavit of Patrick Capone is attached hereto as Exhibit "A".  Defendant Capone's sworn testimony, which is undisputed, is as follows:

> 1.  I have read the allegations in the Complaint filed in the United States District Court for the Middle District of Pennsylvania to docket number 4:10-cv-2133 filed by Alan Smith on October 15, 2010.
>
> 2.  Specifically, I am aware of the allegations set forth in paragraphs 5, 6, and 7 in which Alan Smith alleges that I threatened him with bodily harm and made disclosures to other correctional officers that Smith had been charged with crimes relating to alleged sexual offenses.
>
> 3.  Specifically, I have reviewed the allegations of paragraph 6 in which Smith indicates that I went to his holding cell door and started punching the door and threatening Smith with great bodily harm (Complaint at ¶6).
>
> 4.  I verify that Smith's allegations that I made disclosures about the nature of his offenses and threatened him with bodily harm in the presence of other inmates is false.
>
> 5.  Finally, I have reviewed the remainder of the Complaint relative to the cell extraction that was performed on Alan Smith as well as his allegations that he was subsequently ignored with respect to his request for medical treatment.  I verify that I did not participate

in the cell extraction of Alan Smith nor do I have any
recollection of him asking me for either a slip so that he
could be seen at the prison infirmary or any verbal
request by Smith to be seen at the infirmary.

(Exhibit "A").

2.  Defendant Frank Chiarelli has submitted sworn testimony in the form of

an Affidavit which represents an accurate version of what happened in the above-

referenced matter.  The sworn Affidavit of Frank Chiarelli is attached hereto as

Exhibit "B".  Defendant Chiarelli's sworn testimony, which is undisputed, is as

follows:

1.  I reviewed the log books relative to the cell extraction
performed on Alan Smith which took place on November
20, 2008 and I was not on duty on that date.

2.  I have reviewed the allegations set forth in paragraph
54 of the Complaint wherein Smith alleges that I ordered
that the water be turned off in his cell.  I recall that Smith
had been flooding his cell and it is standard protocol to
turn the water off in the cell to prevent further flooding.
The procedure which is utilized is to turn the water on
once every hour so that the inmate can use the toilet.

3.  I have read the allegations set forth in the Complaint
wherein Smith alleges that he was injured and sought
medical treatment after the cell extraction which was
performed when I was not on duty.  I verify that Smith
never made any personal requests to me, based upon my
best recollection, that he was in need of medical
attention.  Had Smith made such a complaint, I would
have directed him to file a request for an evaluation at

the infirmary.

4.  I have read the allegations of Smith's Complaint that on November 21, 2008, he made requests to Correctional Officer Mallick and Sgt. Shanley for medical attention.  I have also read the allegations that Correctional Officer Blume discharged a can of pepper spray into Smith's face.  I have no knowledge of any of this activity.

5.  I verify that I never had any physical contact with Alan Smith during his stay at the Lackawanna County Prison in the months of November and December 2008.  Moreover, I verify that I never witnessed any physical altercation between Smith and any other correctional officer or staff member at the Lackawanna County Prison.

(Exhibit "B").

    3.  Defendant Jason Moskwa has submitted sworn testimony in the form of an Affidavit which represents an accurate version of what happened in the above-referenced matter.  The sworn Affidavit of Jason Moskwa is attached hereto as Exhibit "C".  Defendant Moskwa's sworn testimony, which is undisputed, is as follows:

1.  I have been employed as a correctional officer at the Lackawanna County Prison for approximately five years (I originally had worked at the prison for two years, secured other employment but then returned to the prison and have been there for the last three years).

2.  I have reviewed the allegations in the Complaint filed by Alan Smith in the United States District Court for the

4

Middle District of Pennsylvania.  Specifically, I have reviewed the Complaint with respect to the allegations that Smith has made against me regarding events that allegedly occurred on or about November 20, 2008 at 9:30 p.m.

3.  I do have a recollection that, along with Correctional Officer Jason Talutto, I escorted the Plaintiff Alan Smith from the Delta Q Block where his cell was located to the infirmary in the evening hours of November 20, 2008. Specifically, I do not have any recollection that a lap belt was placed on Smith but he was hand cuffed which is standard procedure when moving a witness from his cell. I have no recollection with regard to Smith's allegation that his handcuffs had been placed too tightly around his wrists or that he had complained that the handcuffs were bothering him.

4.  Smith's allegation that I roughly grabbed his crotch area causing pain to Smith is false.  At no time did I grab or pull on Smith's genitalia at any time during the period that he was escorted from his cell to the medical department.

5.  I have no recollection of Jason Talutto running his hands between Smith's buttocks and believe that this allegation is false as well.  I have no recollection of any visible injury to Smith's wrists as a result of the escort in the evening hours of November 20, 2008.

(Exhibit "C").

4.  Defendant Jason Talutto has submitted sworn testimony in the form of an Affidavit which represents an accurate version of what happened in the above-referenced matter.  The sworn Affidavit of Jason Talutto is attached hereto as

Exhibit "D".  Defendant Talutto's sworn testimony, which is undisputed, is as

follows:

> 1.  I have read the allegations set forth in this lawsuit by
> Alan Smith and specifically the allegations relating to
> my conduct in dealing with Smith in the evening hours
> of November 20, 2008.

> 2.  I have reviewed the log entries for November 20,
> 2008 and was employed on the second shift on that
> evening.  I have further reviewed the allegations by
> Smith that I performed a strip search in which I ran my
> hands between his buttocks lifting Smith off of the
> ground a number of times causing him great pain.  I
> specifically verify that these allegations made by Smith
> are false.  While a pat search was performed on Smith
> that evening, he was not strip searched nor did I place
> my hands between his buttocks lifting him off of the
> ground.  At no point in time while he was escorted to the
> medical unit did I use excessive force on Smith nor did I
> witness any other correctional officer utilize excessive
> force on Smith.

> 3.  I have also read the allegations set forth in Smith's
> Complaint that he had injuries to his right wrist because
> the handcuffs which had been placed on him were placed
> on him too tightly.  I verify that the reason that Smith
> asked to go to the medical unit was because he had
> complained of a pre-existing injury to his wrists which
> had occurred at some point prior to the time that I
> escorted him to the medical unit.  I verify that none of
> the actions that I took in transporting Smith to medical
> resulted in any injury to his wrists nor were the
> handcuffs placed on Smith utilized in an appropriate
> fashion.

4.  I have read the allegations of paragraphs 48 and 49 in which Smith alleges that upon returning him to his cell I re-cuffed him in a way that created great pain and that I also pushed Smith in returning him to his cell.  I verify that at no time did I place Smith's cuffs on in an inappropriate way or in a manner that would have caused unnecessary pain to him.

5.  I have reviewed Smith's allegations that the water had been turned off in his cell.  Based upon my review of the log sheets this information is accurate.  Furthermore, the reason why the water was shut off in Smith's cell was because he had threatened to flood his cell and had engaged in multiple instances of self-destructive behavior over the course of the preceding 24 hours.

(Exhibit "D").

5.  Defendant Michael Mallick has submitted sworn testimony in the form of an Affidavit which represents an accurate version of what happened in the above-referenced matter.  The sworn Affidavit of Michael Mallick is attached hereto as Exhibit "E".  Defendant Mallick's sworn testimony, which is undisputed, is as follows:

1.  The majority of allegations in this Complaint which relate to my conduct relate to an incident which occurred on November 21, 2008 which is described falsely in Smith's Complaint beginning at or about paragraph 58.

2.  I have read the allegations set forth in paragraph 70 that after pepper spray had been applied to Smith I entered his cell with Correctional Officer Blume and began to beat smith without provocation stepping on his

7

back and deliberately causing injury to Smith's wrist.
These allegations are false.  I have also read Smith's
allegation that I punched him in the back of the head and
the right rib area causing Smith great pain.  These
allegations are false as well.

3.  The true facts and circumstances surrounding the
incident where Smith was removed from his cell on
November 21, 2008 are as follows:

a)     On November 21, 2008, I was assigned to
work the Delta Unit along with Correctional
Officers Blume and Zemantauski. In the
morning hours of November 21, 2008,
Smith was repeatedly kicking his cell door.
In addition, Smith was banging his head on
off of his cell door.

b)     After correctional officers responded to
Smith's cell to determine why he was
kicking the cell door and banging his head
off of the cell door, Smith was given verbal
commands and provided the opportunity to
desist from engaging in acts of self-harm
and voluntarily "cuff-up" without the need
for the use of OC spray.

c)     At approximately 8:15 on November 21,
2008, Sgt. William Shanley responded to
Smith's cell to inquiry as to why he was
engaging in kicking the door and banging
his head off of the door, to which Smith
replied words to the effect "fuck you, I'll
kick your fucking ass".

d)     At approximately 8:22 Dr. Edward Zaloga,
the head physician and Director of

8

Correctional Care, responded to Smith's cell and observed his conduct. At that point in time it was determined that Smith needed to be removed from his cell and placed in four point restraints as he had become a danger to himself.

e)   Sgt. Shanley directed that OC spray be deployed in order to make Smith compliant. At the present time, I am uncertain as to which correctional officer deployed OC spray but I am certain that I did not deploy OC spray at or immediately prior to the time that Smith's cell was entered.

f)   I did enter the cell after OC spray was deployed and at that point in time Smith did become compliant. Smith was handcuffed behind his back. Normal procedure is to shackle an inmate's legs when a cell extraction is being performed. I do not have a specific recollection with regard to Smith's case as to whether leg shackles were utilized.

g)   Smith was then escorted to the shower located in the upper tier of Q Block so that he could be decontaminated from the effects of the OC spray.

h)   After Smith was showered, the order was given to place Smith in four point restraints. Smith was then escorted down into a camera cell, specifically Camera Cell Q5, and placed in four point restraints.

9

4.  With respect to Smith's allegations that I used excessive force in restraining him and that I intentionally inflicted injury upon his wrists by twisting them needlessly, this allegation is false.

5.  With regard to Smith's allegation that he was punched in the side, this allegation is false.  Smith was required to wear a spit shield which is a tool that has been utilized in correctional facilities for many years in which a cloth shield is placed over the prisoner's head to prevent him from spitting but this device does not impede in any way the prisoner's breathing.

6.  I have reviewed the log entries from November 20, 2008 and November 21, 2008 related to the allegations set forth in Smith's Complaint.  I verify that these log notes are kept in the ordinary course of business at the Lackawanna County Correctional Facility and that these entries are made contemporaneously with or shortly after the incidents which they describe.  These log entries are accurate with respect to the interaction between Smith and correctional staff for the dates and times which have been identified in the entries.

(Exhibit "E").


6.  Defendant Joseph Maloney has submitted sworn testimony in the form of an Affidavit which represents an accurate version of what happened in the above-referenced matter.  The sworn Affidavit of Joseph Maloney is attached hereto as Exhibit "F".  Defendant Maloney's sworn testimony, which is undisputed, is as follows:

1. During the time frame alleged in the Complaint, I was the internal affairs investigator/grievance coordinator at the Lackawanna County Prison.  In that capacity, among other things, I was responsible for scheduling and coordinating inmate misconduct hearings as well as grievance hearings requested by inmates.

2. I have reviewed the allegations of the Complaint in which Alan Smith alleges that he did not receive prior written notice of a misconduct in advance of a hearing which had been scheduled and in which I participated.

3. The Lackawanna County Prison follows the procedures set forth in Title 37 of the Pennsylvania Statutes governing correctional facilities and always provides inmates with at least 24 hours notification when disciplinary hearings are conducted.  I know based on my personal knowledge that the standard procedure is to provide an inmate personally with notice of the misconduct charges which have been leveled against him and the inmate either signs for written notification of the charges or the correctional officer who has been assigned to serve the written notification indicates in writing that the inmate has refused to sign.

4. I know based upon personal knowledge and information that I did not conduct hearings of any inmate when the inmate was not given prior notification of the charges against him.

5. I have read the allegation set forth in paragraphs 133, 134, 136, and 137 in which Alan Smith indicates that I violated his rights to procedural due process.  I further verify that at the conclusion of the hearing that was conducted, I was satisfied that the misconduct charges leveled against Alan Smith were meritorious and the discipline which had been imposed against him was

appropriate under the circumstances.  I further verify that
the discipline leveled against Mr. Smith was not
instituted as any form of retaliation but rather because of
Mr. Smith's violation of the rules and regulations of the
Lackawanna County Correctional Facility.

(Exhibit "F").

7.   Defendant Joseph Kearney has submitted sworn testimony in the form of

an Affidavit which represents an accurate version of what happened in the above-

referenced matter.  The sworn Affidavit of Joseph Kearney is attached hereto as

Exhibit "G".  Defendant Kearney's sworn testimony, which is undisputed, is as

follows:

1.   I have reviewed the allegations set forth in
paragraphs 140, 141 and 142 of the Complaint wherein
Smith alleges that Kearney ignored Plaintiff's complaints
that he was being denied proper bedding, cloths and
basic elements of hygiene, that his food trays were being
tampered with and that he was refused medical
treatment.   These allegations are false.  While I was
working on the night of November 28, 2008, I did not
have a conversation with Plaintiff regarding these issues.

2.   Plaintiff further alleges that I specifically stated to
him that "I was told to make sure that you get nothing
while you are at this prison.  This allegation is also false.

3.   Plaintiff also alleges that I indicated that my superiors
directed me not to provide Plaintiff with necessities or
medical attention.  This allegation is also false.

(Exhibit "G").

12

8.  Dr. Zaloga has submitted an Affidavit in support of his Motion for Summary Judgment and it is undisputed that he has indicated in his Affidavit that during the cell extraction of the Plaintiff referenced in the Complaint, that he did not witness Alan Smith being mistreated in any way.  The Affidavit of Dr. Zaloga has been attached to this Statement of Undisputed Material Facts as Exhibit "H".

9.  It is undisputed that Plaintiff Smith has not alleged any conduct on the part of Defendants Donate, Carroll, Shanley, Hebron, Maloney or Kearney constituting the use of excessive force or any type of physical altercation.

10.  It is undisputed that on November 21, 2008, Correctional Officer Mallick completed a Misconduct Report documenting Plaintiff Smith's conduct. A copy of the November 21, 2008 Misconduct Report, consisting of three pages, is attached hereto and identified as Exhibit "I".

11.  It is undisputed that on November 21, 2008, Lt. Carroll completed an Incident Report documenting Smith's conduct. A copy of the November 21, 2008, Incident Report, consisting of two pages, is attached hereto and identified as Exhibit "J".

12.  It is undisputed that the 3-11 Supervisor, Nurse Alexis Mortizkat completed an Incident Report on November 20, 2008 documenting Plaintiff Smith's conduct.  A copy of the Incident Report consisting of one page is attached

13

hereto and identified as Exhibit "K".

13.  It is undisputed that Correctional Officer Zemantauski completed an Incident Report on November 21, 2008 documenting Plaintiff Smith's conduct.  A copy of the Incident Report authored by C.O. Zemantauski and consisting of two pages is attached hereto and identified as Exhibit "L".

14.  It is undisputed that Sgt. Shanley completed an Incident Report dated November 21, 2008, documenting Smith's conduct.  A copy of Sgt. Shanley's Incident Report consisting of one page is attached hereto and identified as Exhibit "M".

15.  It is undisputed that Correctional Officer Blume completed an Incident Report documenting Smith's conduct.  A copy of C.O. Blume's Incident Report consisting of two pages is attached hereto and identified as Exhibit "N".

16.  It is undisputed that Dr. Zaloga completed an Incident Report documenting the conduct of Smith.  A copy of Dr. Zaloga's Incident Report consisting of one page is attached hereto and identified as Exhibit "O".

17.  It is undisputed that Lt. Walsh completed an Incident Report documenting Smith's conduct on November 21, 2008.  A copy of Lt. Walsh's Incident Report consisting of one page is attached hereto and identified as Exhibit "P".

18.  It is undisputed that Assistant Warden Timothy M. Betti completed a Report of Extraordinary Occurrence regarding the November 21, 2008 cell extraction of Mr. Smith.  A copy of the Report of Extraordinary Occurrence consisting of two pages is attached hereto and identified as Exhibit "Q".

19.  It is undisputed that on December 30, 2008, a memo regarding grievances filed by Mr. Smith was provided to Mr. Smith from Correctional Care, Inc.  A copy of the December 30, 2008 Memo consisting of one page is attached hereto and identified as Exhibit "R".

20.  It is undisputed that an Incident Report was completed by Correctional Officer Talutto regarding Smith's conduct.  A copy of C.O. Talutto's Incident Report consisting of one page is attached hereto and identified as Exhibit "S".

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

s/Sean P. McDonough

By: _____

Sean P. McDonough, Esquire
Attorney ID # 47428
Attorney for Defendants Donate, Chiarelli, Carroll, Shanley, Hebron, Kearney, Blume, Mallick, Zemantauski, Moskwa, Talutto and Capone

75 Glenmaura National Blvd.
Moosic, PA 18507

15

Phone (570) 347-1011
Fax (570) 347-7028
smcdonough@dlplaw.com

## CERTIFICATE OF SERVICE

I, SEAN P. McDONOUGH, ESQUIRE, hereby certify that on the 16TH day of December, 2010, I served the foregoing STATEMENT OF UNDISPUTED MATERIAL FACTS, upon the persons indicated below as follows:

Via first class mail, postage prepaid;

Alan Smith
GZ-2324
SCI -Mahanoy
301 Morea Road
Frackville, PA 17932-0001
SPECIAL MAIL - OPEN ONLY IN THE
PRESENCE OF THE INMATE

Via electronic mail

John Q. Durkin, Esquire
O'Malley, Harris, Durkin & Perry, P.C.
345 Wyoming Avenue
Scranton, PA 18503
Counsel for Defendant Zaloga
jdurkin@omalleyandharris.com

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

s/Sean P. McDonough

_____
SEAN P. McDONOUGH, ESQUIRE
Attorney for Defendants Donate, Chiarelli,
Carroll, Shanley, Hebron, Kearney, Blume,
Mallick, Zemantauski, Moskwa, Talutto and
Capone