## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALAN SMITH,** | : | |
| | : | |
| **Plaintiff** | : | **Civil Action No. 4:10-CV-2133** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **JANINE DONATE, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This action commenced on October 15, 2010, when the *pro se* Plaintiff, Alan

Smith, filed a detailed complaint, comprised of 224 separately numbered paragraphs,

with this Court. (Doc.1) In his complaint, Smith alleges that 14 corrections officers,

prison employees, and other individuals providing services to inmates at the

Lackawanna County Prison subjected him to routine beatings, harassment, and other

malicious conduct during the 48-day period between November 19, 2008, and

January 5, 2009, while he was temporarily housed at the prison as a witness to a

grand jury proceeding.[1] Smith has brought this action pursuant to 42 U.S.C. § 1983,

---

[1] Plaintiff represents that he was transferred from the State Correctional
Institution at Huntingdon to the Lackawanna County Prison when he was
subpoenaed to testify on an unknown matter before a Grand Jury sitting in
Lackawanna County.

alleging that his treatment at the hands of the Defendants violated his right to be free

from cruel and unusual punishment under the Eighth Amendment to the United States

Constitution, and also his right to due process under the Fourteenth Amendment.

Although Plaintiff's complaint makes a number of allegations against many of

the Defendants, as to one particular Defendant, Dr. Edward J. Zaloga, D.O., his

allegations are confined to two paragraphs in which Smith alleges that:

> During the beatings and abuse that the Plaintiff was subjected to by the
> prison staff, Defendants Doctor Zaloga and C/O Zemantauski, were
> present and did not intervene, in regards to the beatings and abuse that
> the compliant Plaintiff was subjected to by the prison staff.

(Compl. ¶ 90.)

Smith then asserts that Dr. Zaloga, "violated the Plaintiffs Eighth Amendment Right

by failing to take action to stop the physical beating and abuse that his fellow staff

workers subjected the Plaintiff to." (Id., ¶ 220).  Thus, Smith's claims as to Dr.

Zaloga in this complaint are exceedingly spare and consist of nothing more than an

assertion that the doctor violated the Eighth Amendment by failing to intervene in a

physical altercation between Smith and other correctional staff.

While we initially concluded that this assertion should not be summarily

disposed of as a matter of law at the outset of this litigation, (Doc. 47), in doing so we

noted that: "To the extent Dr. Zaloga concludes that the factual and legal

considerations relevant to Plaintiff's claims against him in this case demonstrate that he is entitled to judgment as a matter of law, he is encouraged to file a factually supported motion for summary judgment at his earliest opportunity." (Doc. 47, p. 10, n. 4)  Dr. Zaloga has now moved for summary judgment on this failure-to-intervene claim, supporting his motions with affidavits from the Lackawanna County Prison warden and himself.  (Docs. 106-111)  These affidavits reveal that Dr. Zaloga is not an employee or correctional official at this county prison.  Rather, he simply is an independent private contractor who provides medical services to inmates by agreement with the county.

As a private contractor, Dr. Zaloga has no law enforcement or corrections responsibilities, duties or training, and Dr. Zaloga is not authorized by the warden to intervene in correctional matters such as cell extractions.  (Id.)  These affidavits further reveal that Dr. Zaloga was present on one occasion, on November 21, 2008, when correctional staff extracted Smith from his cell at the Lackawanna County Prison.  Consistent with prison policies and his limited private contractor status, Dr. Zaloga did not participate in the cell extraction, but rather simply stood by to provide medical care to anyone injured in this incident.  According to Dr. Zaloga's affidavit, following this cell extraction no injuries were observed except for "mild redness" on

both of Smith's wrists, where handcuffs were applied to him in the cell extraction. (Id.)

In his summary judgment motion, Dr. Zaloga also rebuts a claim which is not set forth in Smith's complaint but was apparently articulated by the Plaintiff at his deposition in this lawsuit; namely, a claim of medical negligence that Smith made against the doctor.  With respect to this largely unarticulated claim, the Defendant argues that Smith is barred from pursuing a state law medical negligence tort claim by his failure to comply with Pennsylvania Rule of Civil Procedure 1042.3 which requires the filing a valid certificate of merit along with this malpractice claim.

This summary judgment motion has been fully briefed by the parties, (Docs. 106-111, 131, 137), and is now ripe for resolution.  For the reasons set forth below, it is recommended that this summary judgment motion be granted.

## II.   **Discussion**

### B.   **Rule 56–The Legal Standard.**

Dr. Zaloga has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Through summary adjudication a court is empowered to dispose of those claims that do not

present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that

5

party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000),

6

citing  Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d

Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa.

Aug. 26, 2005).  Thus, a party may not rely upon inadmissible hearsay assertions to

avoid summary judgment.  Therefore, where a party simply presents inadmissible

hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is

appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL

2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104,

2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug

Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that:  "[o]ne cannot create an issue of fact merely

by . . . denying averments . . . without producing any supporting evidence of the

denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true). Yet, while "only

8

evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## B.   Dr. Zaloga is Entitled to Summary Judgement on the Plaintiff's Eighth Amendment Failure-to-Protect Claim

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment.  See U.S. Const. amend. VIII.  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."   Farmer v. Brennan, 511 U.S. 825, 828-29. Therefore, a prison official has a duty to protect inmates from serious risks of harm of which the prison official is aware.  Id. at 833.  However, in order to constitute "deliberate indifference" under the Eighth Amendment, the prison official who is alleged to have failed to protect an inmate must have had subjective knowledge of the risk of serious harm, and he must nevertheless have failed to respond reasonably to the known risk.  Id. at 837-38.  Thus, proof of a culpable subjective intent is a critical

component of any Eighth Amendment claim in a prison setting.  As the United States

Court of Appeals for the Third Circuit explained, the basic requirements of a claim

brought against a prison official under the Eighth Amendment are as follows:

> An Eighth Amendment claim against a prison official must meet two
> requirements: (1) "the deprivation alleged must be, objectively,
> sufficiently serious;" and (2) the "prison official must have a sufficiently
> culpable state of mind."

 Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001)(quoting, Farmer v.

Brennan, 511 U.S. 825, 834 (1994)).  Furthermore, in cases involving prison safety

or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to

inmate health or safety."  Id.

In this case, Smith's Eighth Amendment claim against Dr. Zaloga rests on a

very narrow and specific assertion.   Smith does not allege that Dr. Zaloga

affirmatively injured him.  Rather, he simply faults the doctor for failing to intervene

when prison staff used force to extract him from his cell.  While courts recognize an

Eighth Amendment cause of action based upon a failure to intervene, the contours

and parameters of this claim are carefully circumscribed.  Thus, the United States

Court of Appeals for the Third Circuit considered the question of whether a prison

corrections officer has a duty to take reasonable steps to protect a victim from another

officer's use of excessive force, even if the excessive force is employed by a superior

in <u>Smith v. Mensinger</u>, 293 F.3d 641 (3d Cir. 2002).  Upon consideration of that issue, the Third Circuit held "that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."  <u>Id.</u> at 650.  In addition, the appeals court held "that a corrections officer can not escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers."  <u>Id.</u>

In reaching this holding, the court took care to explain that "the duty to uphold the law does not turn upon an officer's rank . . . [and] is neither affected by, nor proportional to, a non-intervening officer's relationship to an offending colleague."  <u>Id.</u> at 651.  The court emphasized the reason for its conclusion, and expressed its substantial concern with the failure of a police or corrections officer to intervene to prevent excessive force, as follows:

> The approving silence emanating from the officer who stands by and watches as other unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows.  Such silence is an endorsement of the constitutional violation resulting from the illegal use of force.  It is incompatible with the restrictions imposed under the Eighth Amendment, and is therefore unacceptable.  We will not immunize such conduct by suggesting that an officer can silently contribute to such a constitutional violation and escape responsibility for it.  The restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches

11

the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs.

Id. (footnote omitted)

In announcing this holding, the appeals court acknowledged that its prior case law addressing the issue of a failure to intervene involved police officers, rather than corrections officers acting, or failing to act, within the confines of a prison. Id. However, given the specific legal duties imposed on correctional staff, the court held that this distinction did not affect the court's analysis:

> Both are law enforcement officers, both are sworn to uphold the law, and both are authorized to use force (even deadly force) toward that end. We are, of course, aware of the obvious security concerns inside the close confines of a prison. However, that is simply one factor that must be considered in determining if a particular application of force is reasonable. It does not suggest a different Eighth Amendment inquiry for corrections officers as opposed to police officers. The law does not allow either to condone or cover up the use of excessive force. Similarly, neither can escape liability by turning either a blind eye or deaf ear to the illegal conduct of their colleagues.

Id. at 651-52.

Thus, Smith held that corrections officers – like police officers – may be liable under § 1983 for failing to intervene in an instance of excessive force if they had a reasonable opportunity to do so. Moreover, the court held that "neither rank nor supervisory status is a factor in assessing whether [a corrections officer] had 'a realistic opportunity to intervene.'" Id. at 652 (quoting Miller v. Smith, 220 F.3d 491,

495 (7th Cir. 2000)).   Accordingly, following <u>Smith</u> the Eighth Amendment is implicated only in a narrow class of failure-to-intervene claims.   To state a valid cause of action "in a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the inmate must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. <u>Smith v. Mensinger</u>, 293 F.3d 641, 650-51 (3d Cir.2002)." <u>Knauss v. Shannon</u>, CIV. 1:CV-08-1698, 2010 WL 569829 (M.D. Pa. Feb. 12, 2010). "Additionally, it is plaintiff's burden to adduce evidence of [these] requirements.  <u>Gainor v. Douglas County, Ga.</u>, 59 F.Supp.2d 1259, 1289 (N.D.Ga.1998) ('plaintiff must proffer evidence that the officer in question had a reasonable opportunity to intervene.')." <u>Yarnall v. Mendez</u>, 509 F. Supp. 2d 421, 433 (D. Del. 2007).   Furthermore, with respect to the first essential element of this particular constitutional tort–the defendant's legal duty to intervene–courts construe this requirement narrowly and have held that if the defendant "had no special relationship with plaintiff at that time, he had no duty to intervene to protect the constitutional rights of plaintiff."  <u>Fields v. Blake</u>, 349 F. Supp. 2d 910, 921 (E.D. Pa. 2004).

Thus, although <u>Smith</u> announced that *corrections officers* have a legal duty to intervene and that an inmate can maintain a suit under § 1983 if they fail to do so, the

court clearly grounded its decision in the fact that a corrections officer, like a police officer, is a law enforcement officer, sworn to uphold the law, and authorized to use force if necessary. Id. As a result, the court has expressly declined to extend its holding in Smith beyond correctional officers to impose a duty to intervene upon medical employees working within a prison setting. Therefore, where the defendant is a medical professional, and not a correctional officer, no such special duty exists, and an inmate may not sustain a failure to intervene claim. Thus, for example, the United States Court of Appeals for the Third Circuit has held that a failure to intervene claim may not be maintained against a prison nurse, affirming the district court's dismissal of an inmate's claim against a nurse for failing to intervene in a use of force episode involving other corrections staff, because "she [was] not a corrections officer and thus did not have a duty to intervene under the rule acknowledged in Smith." Ali v. McAnany, 262 F. App'x 443, 446 (3d Cir. 2008). At least one court from within this district has subsequently followed Ali and dismissed claims brought against prison medical personnel for failure to intervene in the alleged use of force by law enforcement officials. See, e.g., Harris v. Hershey Med. Ctr., No. 1:08-cv-843, 2009 WL 2762732, *6 (M.D. Pa. Aug. 27, 2009). In sum, although corrections officers may be liable under § 1983 if they fail to intervene in an assault upon an inmate by other corrections officers, prison medical officials,

14

who are not law enforcement officers, have no legal duty to intervene on behalf of an inmate in the midst of physical altercations with staff, and thus cannot be liable under § 1983 for alleged violations of the Eighth Amendment predicated on their alleged failure to intervene or stop the use of force by corrections officers or prison officials.

These principles apply here and are fatal to Smith's failure to intervene claim leveled against Dr. Zaloga. Here, it is undisputed that Dr. Zaloga is not an employee or correctional official at this county prison. Rather, he simply is an independent private contractor who provides medical services to inmates. As a private contractor, Dr. Zaloga has no law enforcement or corrections standing, status, responsibilities, duties, or training, and Dr. Zaloga is not authorized by the warden to intervene in correctional matters such as cell extractions. Given these undisputed facts, Smith's failure to intervene claim against Dr. Zaloga cannot prevail because the first essential element of that claim, a legal duty to intervene, is simply absent. Therefore, this claim should be dismissed with respect to Dr. Zaloga. See e.g., Ali v. McAnany, 262 F. App'x 443, 446 (3d Cir. 2008); Harris v. Hershey Med. Ctr., No. 1:08-cv-843, 2009 WL 2762732, *6 (M.D. Pa. Aug. 27, 2009); Fields v. Blake, 349 F. Supp. 2d 910, 921 (E.D. Pa. 2004).

## C.   Smith May Not Maintain a Medical Negligence Claim Against Dr. Zaloga

Having addressed the cause of action articulated by Smith in his complaint with respect to Dr. Zaloga, we now turn briefly to a second claim made by Smith, not in his complaint, but during his civil deposition–a claim of medical negligence by this Defendant.  Dr. Zaloga seeks summary judgment in his favor on this claim as well, arguing that Smith his barred from pursuing a state law medical negligence claim by his failure to comply with Pennsylvania Rule of Civil Procedure 1042.3 which requires the filing a valid certificate of merit along with this malpractice claim.

We agree.  In fact, we believe that this claim is barred for at least two reasons.  First, we note that this cause of action is not articulated by Smith in his complaint, but rather apparently arose in a haphazard fashion in the course of Smith's deposition in this lawsuit.  As a procedural matter Smith simply cannot add claims to this lawsuit in this particularly casual manner.  Quite the contrary, it is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in  opposition to a dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984));

cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."). Therefore, Smith's passing aside in a deposition that he believes the Defendant to have been negligent does not substitute for properly framed allegations made in a complaint.

But beyond this procedural flaw, there is a more fundamental obstacle to Smith maintaining this state tort negligence claim against Dr. Zaloga arising out of the medical care he provided to this prisoner. In order to present a *prima facie* case of medical malpractice under Pennsylvania law, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." Simpson v. Bureau of Prisons, No. 02-2213, 2005 WL 2387631, at *5 (M.D.Pa. Sept. 28, 2005). This requirement is imposed upon malpractice plaintiffs like Smith by Pennsylvania Rule of Civil Procedure 1042.3 which requires the filing a valid certificate of merit along with this malpractice claim.

Pa.R.C.P. No. 1042.3 ("Rule 1042.3") provides in pertinent part:

Rule 1042.3. Certificate of Merit

(a) In any action based upon an allegation that a licensed professionals deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Thus, to the extent that Smith wishes to bring a medical malpractice action, his failure to comply with Rule 1042.3 is a bar to this claim. In this regard, the controlling legal standards can be simply stated:

> Under Pennsylvania law, "[a] certificate of merit must be filed either with the complaint or within sixty days after the filing of the complaint in any action asserting a professional liability claim 'based upon the allegation that a licensed professional deviated from an acceptable professional standard." ' Smith v. Friends Hospital, 928 A.2d 1072, 1074-75 (Pa.Super.Ct.2007) (quoting PA. R. CIV. P. 1042.3). Federal courts have found that this rule constitutes state substantive law and thus applies in federal courts in Pennsylvania pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See

> Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 510 (E.D.Pa.2005) (citing
> Chamberlain v. Giampap, 210 F.3d 154, 158-61 (3d Cir.2000), which
> held that an analogous New Jersey statute was substantive law);
> Velazquez v. UPMC Bedform Mem'l Hosp.., 328 F.Supp.2d 549
> (W.D.Pa.2004). Courts may dismiss cases when a plaintiff fails to file
> a required certificate of merit.   See, e.g., Stroud v. Abington Mem.
> Hosp., 546 F.Supp.2d 238, (E.D.Pa.2008); Bresnahan v. Schenker, 498
> F.Supp.2d 758, 762 (E.D.Pa.2007); McElwee Group, LLC v. Mun.
> Auth. of Elverson, 476 F.Supp.2d 472, 475 (E.D.Pa.2007) (holding that
> "failure to submit the certificate is a possible ground for dismissal by the
> district court, when properly presented to the court in a motion to dismiss).

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778, *3 (M.D.Pa. Aug. 13, 2009).

This requirement of state law applies with equal force to counseled complaints, and to *pro se* medical malpractice actions brought under state law. See Hodge v. Dept. of Justice, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file COM); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007); Levi v. Lappin, No. 07-1839, 2009 WL 1770146 (M.D. Pa. June 22, 2009).  Therefore, Smith's status as a *pro se* litigant cannot excuse him from compliance with the substantive state law when bringing this state law claim of malpractice.  Id.  Moreover, Pennsylvania caselaw construing this certificate of merit requirement has expressly extended the requirement to a wide array of malpractice claims like those brought here. See, e.g., Estate of Aranda, 987 A.2d 727 (Pa Super. 2009); Pollock v. Feinstein, 917 A.2d 875 (Pa. Super. 2007);  Brownstein v. Gieda, No. 08-1634,  2009 WL 2513778 (M.D.Pa.

19

Aug. 13,2009)(construing Pennsylvania law).  Cf. Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 260 (3d Cir. 2011) (in context of a diversity action, holding that the certificate of merit requirement provided by Rule 1042.3 constitutes substantive state law that federal courts must apply under Erie v. Tompkins, 304 U.S. 64 (1938)).

Given the substantive nature of this requirement under Pennsylvania law, Smith's undisputed failure to comply with this requirement,  and its clear application to inmate medical malpractice and negligence claims, it is recommended that Smith's medical malpractice claim against Dr. Zaloga be dismissed.[2]

_____

[2]However, while the Plaintiff's failure to comply with Rule 1042.3 requires dismissal of this malpractice claim, we note that the sanction imposed under state law for a violation of this rule, entry of a non pros by the prothonotary, has no precise analogue in the federal system. Thus, as least one federal court has held in this context that "[u]nlike dismissal with prejudice, the entry of non pros is a default judgment that does not bar the plaintiff from commencing another suit based upon the same cause of action." Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D. Pa. 2007)(quoting, Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 511 (E.D. Pa. 2004). Moreover, under Pennsylvania law, a party can seek relief from a non pros dismissing a case under Rule 1042.3, by coming into compliance with the rule, showing that there is a meritorious malpractice cause of action, and providing a reasonable explanation or legitimate excuse for then earlier non-compliance. See Womer v. Hilliker, 208 A.2d 269 (Pa. 2006), see also  Pa.R.C.P. No. 3051. Therefore, Smith may still have recourse to some courts on this claim, if he: (1) timely includes the claim in a properly framed complaint; (2) timely files a certificate of merit; or (3) can otherwise meet the standards prescribed by law for a late filing. However, until Smith takes these steps, and complies with Rule 1042.3, we should dismiss this medical malpractice claim.

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED

THAT Defendant Zaloga's motion for summary judgment (Doc. 106), be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 5th day of April 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge